**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| quasar energy group LLC,<br><br>Plaintiff,<br><br>v.<br><br>WOF SW GGP 1 LLC,<br><br>Defendant. | No. CV-18-02300-PHX-RCC (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Stay. (Doc. 14). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned for a Report and Recommendation. (Doc. 23). The motion has been fully briefed, and the Court heard oral argument from the parties on November 15, 2018. For the reasons stated below, the Magistrate Judge recommends that the District Court enter an ordering granting Defendants' Motion to Dismiss.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff quasar energy group, llc ("Quasar") filed this action on July 23, 2018 alleging claims against Defendant WOF SW GGP 1 LLC ("WOF") for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment. (Doc. 1). The basis of the parties' dispute concerns two contracts: a Design-Build Agreement and General Conditions Between Owner and Design-Builder ("Design-Build Agreement"), whereby WOF would pay Quasar to construct an anaerobic digestion facility, and an Operations and Maintenance

Management Services Agreement ("O&M Agreement"), whereby WOF would pay Quasar to manage and operate the project. (Doc. 1 at 3–4). While Quasar alleges that the parties entered both agreements on April 5, 2017 (Doc. 1 at 4 ¶¶ 12–13), WOF states that the parties entered the Design-Build Agreement on April 5, 2017 and the O&M Agreement on April 19, 2017 (Doc. 14 at 2).

Quasar alleges that WOF refused and substantially delayed, without reasonable justification, to provide certain items for the project, including water and seed sludge, and that because of WOF's delay, Quasar was delayed in discovering leaks in the storage tanks and timely completing its work under the Design-Build Agreement. (Doc. 1 at 5–6). Quasar further alleges that WOF requested that Quasar install a redundant flare and blower system that was not part of the original scope of work. *Id.* at 6 ¶ 22. Quasar provided WOF with a proposal for the cost of the system plus construction and design costs, but alleges WOF failed to timely approve the purchase. *Id.* at 7 ¶ 23; 9 ¶¶ 28–29. Quasar also states that in April 2018, it sent notices to WOF for failure to make timely payments for work performed, but that WOF did not make payment until May 18, 2018. *Id.* ¶¶ 30–31.

On May 21, 2018, WOF sent notice that Quasar was not supplying qualified workers to complete the project, and Quasar responded with assurances as to the worker's qualifications and the safety of the project. *Id.* ¶¶ 35–36. Quasar requested to meet with WOF pursuant to the dispute resolution provisions of the Design-Build Agreement, but WOF ignored the request. *Id.* ¶¶ 36, 38–39. On May 28, 2018 WOF sent a second notice to cure, and Quasar responded that it was WOF's failure to timely provide necessary materials and approvals that prevented Quasar's timely completion of the project. *Id.* ¶¶ 41–42.

On May 31, 2018 WOF claimed Quasar had defaulted under the O&M agreement by failing to meet deadlines under the Design-Build Agreement and that Quasar had misappropriated WOF funds. *Id.* ¶ 44, 46. Quasar alleges WOF wrongfully terminated the O&M Agreement without engaging in the dispute resolution process and without

giving the 120 days' notice required by the contract. *Id.* ¶¶ 46, 48. Quasar contacted a mediator, but WOF responded that mediation was premature because the parties needed to conduct direct discussions. *Id.* ¶¶ 50–51. On June 12, 2018 WOF terminated the Design-Build Agreement, alleging that Quasar failed to perform and failed to make corrections following notice of breach of provisions of the contract. *Id.* ¶ 54.

Quasar alleges that WOF failed to timely and in good faith provide the materials and approvals obligated under the Design-Build Agreement that Quasar needed to timely complete the construction. *Id.* ¶¶ 56–57. Quasar further alleges that WOF terminated the O&M Agreement for the purpose of securing Quasar's employees and to avoid paying Quasar. *Id.* ¶ 59.

On July 19, 2018 the parties participated in mediation of all disputes under both agreements. (Doc. 20 at 3). On that same date, WOF filed a complaint against Quasar in the Circuit Court of the State of Oregon seeking declaratory relief; specifically, WOF requested a court order stating that it rightfully terminated the O&M Agreement and that it had no obligation to pay Quasar. (Doc. 14-2 at 6–7). On August 9, 2018 Quasar removed the case to the United States District Court of Oregon, Portland Division. (Doc. 14 at 2–3). On August 10, 2018 Quasar filed a Motion to Dismiss, or in the Alternative, Transfer or Stay the Oregon suit, claiming an exception to the first to file rule. (Doc. 21 at 2). On August 23, 2018, WOF filed a motion to remand the suit back to Oregon state court based on the waiver provision of the forum selection clause in the O&M Agreement. *Id.*[1]

On July 23, 2018 Quasar filed its Complaint in this Court alleging breach of both the Design-Build Agreement and the O&M Agreement. The Complaint states five claims for relief: One, breach of the Design-Build Agreement; Two, breach of the O&M Agreement; Three, breach of the implied covenant of good faith and fair dealing; Four,

---

[1] As of the oral arguments on November 15, 2018, the parties were still waiting on a ruling from the District Court of Oregon on Quasar's motion to dismiss/transfer/stay and WOF's motion to remand. WOF's counsel explained that the Oregon District Court entered an order on August 28, 2018 striking further briefing on Quasar's motion to dismiss and stating that it would take WOF's motion to remand under advisement as of November 20, 2018. (Doc. 29 at 24:5–11).

promissory estoppel; and Five, unjust enrichment. (Doc. 1). Quasar states that it filed its suit before being served or otherwise notified of WOF's Oregon suit. (Doc. 20 at 3).

On August 21, 2018, WOF filed its Motion to Dismiss or, in the Alternative, Stay the Arizona suit. (Doc. 14). WOF states that it properly filed the Oregon suit to resolve claims relating to the O&M Agreement and that Quasar is improperly attempting to combine litigation of the O&M Agreement and the Design-Build Agreement. (Doc. 14 at 4). WOF claims that "Quasar seeks to litigate the O&M Agreement and Design-Build Agreement together in Arizona, without regard to the first-to-file rule, the O&M's forum-selection clause, and despite the fact that the O&M Agreement and Design-Build Agreement are separate contracts containing irreconcilable provisions regarding governing law, right to a jury trial, and recovery of attorney fees." (Doc. 14 at 3). Thus, WOF seeks dismissal of Quasar's claims as they relate to the O&M Agreement, or, in the alternative, a stay of the O&M claims in the Arizona suit.

**II. DISCUSSION**

Both the O&M Agreement and the Design-Build Agreement are at issue in both this action and the Oregon suit. Here, WOF contends that Quasar is improperly attempting to litigate both agreements in Arizona, even though the Oregon action was filed first and the O&M Agreement includes a forum selection clause and waiver provision that requires claims relating to the O&M Agreement to be litigated in Oregon. WOF argues that this Court should decline jurisdiction and dismiss Counts Two, Three, Four, and Five of the complaint (as they relate to the O&M Agreement), or, in the alternative, stay the Arizona suit, or sever and transfer the O&M claims from the Arizona suit to the Oregon suit. (Doc. 14 at 5). In contrast, Quasar contends that WOF's arguments are fatally flawed because WOF ignores the legal impact of the Design-Build Agreement and the fact that its Oregon suit is based largely on whether Quasar breached the Design-Build Agreement. (Doc. 20 at 1). Quasar further argues that the Design-Build agreement has a mandatory venue provision that requires disputes to be litigated in Arizona, whereas in the O&M Agreement the parties agreed to the permissive and non-

exclusive jurisdiction of the Oregon courts. *Id.* at 1–2.

There is no dispute that WOF filed the Oregon action first. Thus, the question before the Court is whether the first to file rule applies here to bar Quasar from litigating any claims under the O&M Agreement in Arizona, or whether the mandatory forum selection clause in the Design-Build Agreement trumps the forum selection clause in the O&M Agreement and requires that the parties' claims under both agreements be litigated in Arizona. After a careful review of the pleadings and the parties' oral arguments, the undersigned recommends that the District Court enter an order granting WOF's motion to dismiss Quasar's claims related to the O&M agreement without prejudice and with leave for Quasar to file an amended complaint reasserting those claims pending the outcome of the Oregon District Court's ruling on the motions currently pending before it.

### A. Forum Selection Clause

WOF first argues that this Court should decline jurisdiction and dismiss Quasar's claims relating to the O&M Agreement because the O&M Agreement's forum selection clause provides that any claim arising from or related to the O&M Agreement may be brought in Oregon, and also includes an express waiver of objections to venue. (Doc. 14 at 5). WOF also notes that in the Oregon suit, Quasar explicitly relied on the O&M Agreement's forum selection clause when it removed the case to federal court, and thus Quasar should now be judicially estopped from denying the applicability of the O&M Agreement's forum selection clause. (Doc. 21 at 3).

Quasar contends the O&M Agreement "contains a permissible, non-exclusive venue provision allowing the parties to file disputes arising under the O&M Agreement in Oregon, but only to the extent that is not trumped by the mandatory venue provision in the Design-Build Agreement." (Doc. 20 at 4). Quasar further argues that the Design-Build Agreement's forum selection clause is mandatory and thus requires those issues to be litigated in Arizona. *Id.* at 6, 10. Quasar also contends that enforcing the O&M Agreement's forum selection cause would be unreasonable because it would result in the type of piecemeal litigation that courts strive to avoid. (Doc. 20 at 11). Finally, Quasar

argues that bifurcating the litigation would make it impossible to join any relevant subcontractors who performed work under the Design-Build Agreement in Arizona in the Oregon suit, because the subcontractors would have no connection to Oregon or the O&M agreement. (Doc. 20 at 12).

### i. Law

"Forum selection clauses are presumptively valid [and t]he U.S. Supreme Court and lower federal courts have consistently recognized contracting parties' freedom to bind themselves to a chosen forum for the resolution of any disputes that may later arise." *U.S. ex rel. Purcell P & C, LLC*, 2012 WL 2871787 at *3 (citations omitted). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion [to transfer venue] be denied." *Id.*[2] As the Supreme Court explained,

> The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." [*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)] (KENNEDY, J., concurring). For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.*, at 33, 108 S. Ct. 2239 (same).

571 U.S. at 63 (second alteration in original). Thus, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 66. "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* Finally, the party challenging a forum selection "clause bears a 'heavy burden of proof' and must 'clearly

---

[2] In *Atlantic Marine*, the Court specifically found that a party may not enforce a forum-selection clause by seeking dismissal of the suit under Fed. R. Civ. P. 12(b)(3) because that rule allows for "dismissal only when venue is 'wrong' or 'improper'[, and w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum selection clause." 571 U.S. at 55.

- 6 -

show that enforcement would be unreasonable and unjust.'" *U.S. ex rel. Purcell P & C, LLC*, 2012 WL 2871787 at *3 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 1916 (1972)).

### ii. Analysis

The relevant portions of the O&M Agreement state:

> 17.1 Governing Law.
>
> This Agreement will be governed by, and construed in accordance with, the laws of the State of Oregon without reference to conflicts of laws rules thereof. The Parties hereby irrevocably submit to the non-exclusive jurisdiction of any state or federal court in the State of Oregon with respect to any action or proceeding arising out of or relating to this Agreement. THE PARTIES HEREBY IRREVOCABLY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY DISPUTE ARISING OUT OF OR RELATED TO THIS AGREEMENT BROUGHT IN SUCH COURT OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING RELATING TO A DISPUTE AND FOR ANY COUNTERCLAIM WITH RESPECT THERETO. Each Party hereby agrees that a judgment in any dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by Applicable Law. The Parties hereby consent to process being served by either party in any suit, action or proceeding of the nature specified in this Section 17.1 by delivering notice thereof in the manner specified in Section 14.
>
> . . .
>
> 17.2.7 The word "shall" means mandatory and imperative.
>
> . . .
>
> 17.2.10 The Exhibits attached to this Agreement constitute part of this Agreement and are incorporated herein for all purposes.
>
> . . .
>
> 17.11 Dispute Resolution.
>
> In the event a dispute, controversy or claim arises hereunder, the aggrieved Party shall, provide written notification of the dispute to the other Party. A meeting will be held promptly

between the Parties, attended by representatives of the Parties with decision-making authority regarding the dispute, to attempt in good faith to negotiate a resolution of the dispute. If the Parties are not successful in resolving a dispute within twenty-one (21) days, the Parties will thereafter endeavor to resolve the matter by mediation. The mediation shall be administered by Scott, Skelly and Muchmore, LLC Mediation and Arbitration Services, 1313 E. Osborn Road, #120, Phoenix, Arizona 85014. The mediation shall be convened within thirty (30) Business Days of the matter first being discussed and shall conclude within forty-five (45) Business Days of the matter first being discussed. Either Party may terminate the mediation at any time after the first session by written notice to the non-terminating Party and mediator. The costs of the mediation shall be shared equally by the Parties. If the matter is unresolved after discussions under this Section 17.11, then either Party may pursue remedies available to it at law or in equity. The prevailing or non-defaulting Party in any legal proceeding related to this Agreement (including in any bankruptcy proceeding) shall receive as an award its reasonable attorneys' fees, reasonable expert fees, and costs and expenses.

(Doc. 1-5 at 16, 17, 18).

The Design-Build Agreement states:

> 13.2 DIRECT DISCUSSIONS In the event a dispute, controversy or claim arises hereunder, the aggrieved Party shall, prior to pursuing any other remedies, provide written notification of the dispute to the other Party. A meeting will be held promptly between the Parties, attended by representatives of the Parties with decision-making authority regarding the dispute, to attempt in good faith to negotiate a resolution of the dispute.
>
> . . .
>
> 13.4 MEDIATION If direct discussions pursuant to Section 13.2 do not result in resolution of the matter within twenty-one (21) days and no dispute mitigation procedure is selected under Section 13.3, the Parties shall endeavor to resolve the matter by mediation. The administration of the mediation shall be administered by Scott, Skelly and Muchmore LLC Mediation and Arbitration Services, 1313 E. Osborn Road, #120, Phoenix, Arizona 85014. The mediation shall be convened within thirty (30) Business Days of the matter first being discussed and shall conclude within forty-five (45) Business Days of the matter first being discussed. Either Party may terminate the mediation at any time after the first session by written notice to the non-terminating Party and mediator. The costs of the mediation shall be shared equally by the Parties.
>
> 13.5 BINDING DISPUTE RESOLUTION If the matter is

> unresolved after discussions under Section 13.2 and mediation under Section 13.4, then either Party may pursue remedies available to it at law or in equity.
>
> . . .
>
> 13.5.2 VENUE The venue of any binding dispute resolution procedure shall be Phoenix, Arizona, unless the Parties agree on a mutually convenient location elsewhere.
>
> . . .
>
> 14.3 GOVERNING LAW This Agreement shall be governed by the law in effect at the location of the Project.

(Doc. 1-2 at 44–45).

Based on the foregoing, the undersigned finds that the O&M Agreement's forum selection clause provides that claims may be brought in Oregon. Because the clause is permissive, claims could also be brought in any other appropriate court that would have jurisdiction over the parties and claims.[3] However, once a suit is filed, whether in Oregon or any other state, the waiver provision in the forum selection clause prevents the parties from challenging the venue or making any objections to the forum as inconvenient.[4] *See Sun v. Advanced China Healthcare*, 901 F.3d 1081, 1091 (9th Cir. 2018) ("Where the parties have agreed to a forum-selection clause, they 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" (quoting *Atl. Marine*, 571 U.S. at 64)).

In contrast to the O&M Agreement's permissive forum selection clause, both parties stated at oral argument that they read and interpret § 13.5.2 of the Design-Build Agreement as a mandatory venue provision that requires litigation of disputes under that agreement to be in Arizona. (Doc. 29 at 5–6). Where the parties differ is in their interpretation of how the forum selection clauses in the two agreements operate together.

---

[3] *See* § 17.1: "The Parties hereby irrevocably submit to the non-exclusive jurisdiction of any state or federal court in the State of Oregon. . . ."
[4] *See* § 17.1: "THE PARTIES HEREBY IRREVOCABLY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY DISPUTE ARISING OUT OF OR RELATED TO THIS AGREEMENT BROUGHT IN SUCH COURT OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE."

WOF contends that "the waiver clause is a negotiated agreement that disputes under the O&M Agreement will be litigated in Oregon once the suit was filed there[,]" and that "[t]he potential involvement of the Design-Build Agreement is not a reason to disregard the negotiated express waiver of objection to venue clause." (Doc. 29 at 19:16–18; 20:9–13). WOF maintains that even if it were to lose on the Design-Build Agreement claims in the Arizona suit, it would still have a valid cause of action under the O&M Agreement in the Oregon suit. In contrast, Quasar argues that the Design-Build Agreement's mandatory venue provision trumps the forum selection clause in the O&M Agreement. Quasar further argues that litigation of the O&M Agreement will necessarily involve analysis of the Design-Build Agreement and that "[i]t would be wasteful and risk conflicting judgments if both the Arizona federal court and Oregon state or federal court were deciding the same factual issues relating to breaches of the contracts." (Doc. 20 at 12).

The undersigned will not adopt Quasar's argument that the Design-Build Agreement's forum selection clause necessarily trumps the O&M Agreement when the parties contracted for these two competing venue provisions. The parties must now deal with the problem that they created with two different lawsuits proceeding in two different forums. WOF's motion to remand the Oregon suit back to state court and Quasar's motion to dismiss/transfer/stay the Oregon suit are still pending. It will be up to the Oregon courts to reconcile the forum selection clauses and determine whether WOF's claims under the O&M Agreement should be litigated in Oregon or transferred to this Court.

### B. First to File Rule

WOF also argues that this Court should decline jurisdiction over the claims related to the O&M Agreement based on the first to file rule. Quasar contends that the first to file rule does not apply here because WOF cannot avoid the mandatory venue provision in the Design-Build Agreement requiring disputes to be litigated in Arizona merely because it filed its Oregon complaint first. (Doc. 20 at 14). Quasar also contends that the first to file rule is "flexible." Specifically, Quasar claims that the anticipatory suit exception

applies in cases such as this one where a plaintiff sues for declaratory relief—Quasar alleges WOF filed the Oregon suit in anticipation of Quasar filing its suit in Arizona. *Id.* at 15–17. In contrast, WOF notes that the Ninth Circuit has held that the first to rule "should not be disregarded lightly" and that courts should only refuse to apply it in exceptional circumstances. (Doc. 21 at 9).

### i. Law

"The 'first-to-file' rule is a 'generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Best W. Int'l, Inc. v. Patel*, 2008 WL 608382, at *3 (D. Ariz. Mar. 3, 2008) (quoting *Pacesetter Systems, Inc. v. Medtronic. Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982)). The rule "is intended to serve the purpose of promoting efficiency well and should not be disregarded lightly," *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015), and "[t]he primary purpose behind the first-to-file rule is to avoid unnecessarily burdening the federal judiciary and to avoid conflicting judgments." *Jumapao v. Washington Mut. Bank, F.A.*, 2007 WL 4258636, at *1 (S.D. Cal. Nov. 30, 2007). "Thus, '[w]hen two cases involving the same parties and issues are filed in two different federal districts, the first-to-file rule permits the *second* district court to exercise its discretion to transfer, stay, or dismiss the *second suit in the interests of efficiency and judicial economy*.'" *Best W.*, 2008 WL 608382, at *4 (quoting *Amerisourcebergen Corp. v. Roden*, 495 F.3d 1143, 1156 (9th Cir. 2007)); *Kohn*, 787 F.3d at 1240 ("When applying the . . . rule, courts should be driven to maximize economy, consistency, and comity." (internal quotations and citation omitted)).

"However, this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. Thus, a court "can, in the exercise of [its] discretion, dispense with the firstfiled principle for reasons of equity." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). However, "[o]ur starting point is

an appreciation that departure from the first-filed rule is an exception only to be utilized in 'rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping.'" *Knedlik v. Lincoln Inst. of Land Policy*, 883 F.2d 1024, *4 (9th Cir. 1989) (quoting *EEOC v. University of Pennsylvania*, 850 F.2d 969, 972 (3d Cir.), *cert. granted in part*, --- U.S. ---, 109 S. Ct. 554 (1988), *order amended*, --- U.S. ---, 109 S. Ct. 1660 (1989)); *see also Best W.*, 2008 WL 608382 at *6 (exceptions to the first to file rule include bad faith, anticipatory suit, forum shopping, and where the balance of convenience weighs in favor of the later-filed action).

### ii. Analysis

To apply the first to file rule, "a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn*, 787 F.3d at 1240. In this case, there is no dispute that the Oregon action was filed first, and the parties are identical. As to the third factor, similarity of the issues, "[t]he issues in both cases . . . need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240. "To determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits." *Id.* at 1241; *see also Alltrade*, 946 F.2d 622 (affirming district court's finding that first-to-file rule applied, despite fact that first-filed action involved additional claims and party); *Youngevity Intern., Inc. v. Renew Life Formulas, Inc.*, 42 F.Supp.3d 1377, 1383 (S.D. Cal. 2014) (rule does not require strict identity of issues or exact parallelism); *Inherent.com v. Martindale–Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D. Cal. 2006) ("'sameness requirement does not mandate that the two actions be identical, but is satisfied if they are 'substantially similar'"); *Jumapao*, 2007 WL 4258636, at *2 ("Substantial similarity exists where the two cases rest on identical factual allegations and assert identical or analogous claims.").

Here, the undersigned finds that there is substantial overlap between the issues in the Oregon suit and the Arizona suit. Both suits involve the same general subject matter, whether each party breached the Design-Build Agreement and/or the O&M Agreement, and both suits will require a determination of the actions or inaction each party took

under the contracts, the timing of those actions, and whether the actions were in compliance with or violation of the contracts. "Consequently, 'the same set of general facts will apply to' resolving both actions." *Best W.*, 2008 WL 608382 at *6 (quoting *Inc. v. Executive Development Systems, Inc.*, 2007 WL 129039, at *2 (D. Idaho 2007)). Further, both suits allege claims pursuant to the O&M Agreement. While Quasar's complaint in this Court also alleges claims pursuant to the Design-Build Agreement, as Quasar itself argues, resolution of WOF's claims under the O&M Agreement in the Oregon suit will likely require some analysis of the Design-Build Agreement. *See Supervalu*, 2007 WL 129039 at *1 ("in determining whether the cases involve the same issue, it is enough that the overall content of each suit is not very capable of independent development, and will be likely to overlap to a substantial degree"). "Moreover, to the extent the relief sought may differ between the two actions, that does not render the actions dissimilar." *Best W.*, 2008 WL 608382 at *6.

The undersigned further finds that the anticipatory suit exception does not apply. While Quasar argues that WOF filed its Oregon suit in anticipation of the fact that Quasar was preparing to file suit, there is simply not enough evidence before the Court to support this allegation, let alone sufficient evidence to constitute a rare or extraordinary circumstance such that this Court should decline to apply the first to file rule.

> The anticipatory suit exception is grounded in equitable principles and has a very specific meaning in this context. The exception does not apply simply because a party anticipates litigation and sues first to obtain its choice of forum. Rather, the exception applies when a would-be plaintiff is "deprived of its traditional choice of forum" because the other party lacked a "pre-existing motive for going to court" and filed suit based on "specific, concrete indications that a suit . . . was imminent." *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1097–98 (N.D. Cal. 2006).

*Jive Software, Inc. v. Parkview Health Sys.*, 2018 U.S. Dist. LEXIS 52720, at *5–6 (D. Or. Mar. 29, 2018) (quoting *Adidas Am., Inc. v. Herbalife Int'l. Inc.*, 2010 U.S. Dist. LEXIS 13327, at *5–6 (D. Or. Feb. 12, 2010)); *see also Youngevity*, 42 F.Supp.3d at 1383 ("a suit is anticipatory when the plaintiff files suit upon receipt of specific, concrete

indications that a suit by the defendant is imminent"). Further, "[t]he equitable principle underlying the anticipatory suit exception to the first-to-file rule is that the proper plaintiff to a controversy *should* have its choice of venue, and that the proper plaintiff is deprived of that traditional choice by the would-be defendant's anticipatory filing." *Jive Software*, 2018 U.S. Dist. LEXIS 52720 at *7 n.1.

Here, the parties were involved in disagreements and discussions for several months before either suit was filed. WOF terminated both the Design-Build Agreement and the O&M Agreement based on Quasar's alleged breaches. Quasar alleged that WOF failed to provide necessary materials and approvals, and failed to engage in the required dispute resolution process. The parties did participate in mediation, but were unable to resolve their claims. *See Anton Sport, Inc., v. Monkey Boy Graphix, Inc.*, 2008 WL 11339089, *3 (D. Ariz. July 22, 2008) (filing suit without attempting settlement may demonstrate bad faith while filing only after efforts to avoid litigation may demonstrate lack of bad faith). Thus, from the evidence before the Court, it seems litigation was inevitable. This is not a situation where WOF lacked a pre-existing motive for going to court; rather, here we have two proper plaintiffs, each alleging wrongdoing by the other. While WOF's Oregon suit does seek declaratory relief, the undersigned finds that that alone is not enough to constitute an extraordinary circumstance such that the first to file rule should be dispensed with, as WOF is entitled to seek a declaration that it properly terminated the O&M Agreement. *See Anton Sport,* 2008 WL 11339089 at *3 ("The purpose of the declaratory judgment act is 'to afford an added remedy to one who . . . desires an early adjudication without having to wait until he is sued by his adversary.'" (quoting *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986))).[5] Moreover, WOF's decision to file suit in Oregon does not support Quasar's contention that WOF's suit was anticipatory because the parties specifically contracted in

---

[5] The undersigned further notes that part of Quasar's argument is that WOF's suit is anticipatory because it filed in Oregon immediately following the failed mediation. However, Quasar filed suit in Arizona just four days after the mediation and before it allegedly had any knowledge of or was served with notice of the Oregon suit. Thus, from a timing perspective, had Quasar filed first, just days after the mediation, its lawsuit could perhaps also be described as anticipatory.

the O&M Agreement for the non-exclusive jurisdiction of the Oregon courts. *See Youngevity*, 42 F.Supp.3d at 1383 (citing *Alaris Med. Sys. V. Filtertek, Inc.*, 64 U.S.P.Q.2d 1955 (S.D. Cal. 2001) for the finding that "anticipatory suits are disfavored because they are examples of forum shopping" and *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967) where the court "found that the plaintiff's suit for declaratory relief was anticipatory where it was filed following receipt of the defendant's notice of intent to sue if plaintiff did not voluntarily submit to jurisdiction in a selected forum.").

Accordingly, because all three factors of the first to file rule are met, and in the interests of efficiency and judicial economy, the undersigned recommends that this Court should exercise its discretion to dismiss the O&M Agreement claims from this action. Doing so will avoid a situation where this action could be stayed for an indefinite amount of time pending the Oregon District Court's rulings on the motions currently pending before it, and will allow this action to move forward with litigation of Quasar's claims under the Design-Build Agreement.

**C. Stay**

If the Court declines to dismiss the claims relating to the O&M Agreement based on the forum selection clause or the first to file rule, then WOF argues that the Court should stay the Arizona suit pending outcome of the motions in the Oregon suit. (Doc. 14 at 9). In light of the undersigned's recommendation that this Court enter an order granting WOF's motion to dismiss the O&M Agreement claims, the undersigned finds that a stay is inappropriate. As the parties explained at oral argument, there is no definite time frame as to when the Oregon District Court will enter an order on the motions currently pending before it, and the undersigned finds that it would contravene principles of judicial economy and potentially delay resolution of both suits if this Court were to enter an order staying the Arizona suit.[6] Rather, the undersigned recommends that this Court enter an order granting WOF"s motion to dismiss the O&M Agreement claims so that this matter

---

[6] *See supra* n.1

- 15 -

may proceed on the Design-Build Agreement claims, and thereby avoid creating any further delay by staying the entirety of this action until some unknown time when the Oregon District Court enters its order on the motions currently pending before it.[7]

### D. Forum Non Conveniens

Finally, WOF notes that Quasar may argue that the convenience of the parties and witnesses weighs in favor of litigating the O&M claims in Arizona. WOF contends that this argument is moot because Quasar waived this defense in the O&M Agreement. (Doc. 14 at 12).

"In appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses . . . However, normally the forum non conveniens argument should be addressed to the court in the first-filed action." *Pacesetter*, 678 F.2d at 96; *Youngevity*, 42 F.Supp.3d at 1384 ("the respective convenience of the two courts should be addressed by the court in the first-filed action."). Here, Quasar already filed a motion with the Oregon District Court requesting that the court dismiss, transfer, or stay the Oregon suit, claiming an exception to the first to file rule. That "motion is already . . . pending before the [Oregon] court; for this Court to issue a ruling would risk inconsistent results, exactly the outcome to be avoided by the rule in the first place." *EMC Corp. v. Bright Response, LLC*, 2012 WL 4097707, at *3–4 (N.D. Cal. 2012) (collecting cases and declining to rule on plaintiff's argument regarding the convenience factors because "it is typically the first-filed court that should make this determination" regarding a motion to transfer under 28 U.S.C. § 1404(a)). Further, as explained above, once the Oregon lawsuit was filed in state court,

---

[7] The undersigned notes that while some courts have found dismissal of a second-filed action is inappropriate where a motion to dismiss, transfer, or stay is still pending in the first-filed action, in the present case the undersigned is not recommending dismissal of the entire Arizona suit, but only of the claims related to the O&M Agreement so that the litigation may continue moving forward on the Design-Build Agreement claims. *See e.g. Youngevity*, 42 F.Supp.3d at 1384 (citing *Alltrade*, 946 F.2d at 629 and *British Telecomm. Plc. v. McDonnell Douglas Corp.*, 1993 WL 149860, at *5 (N.D. Cal. May 3, 1993)). The undersigned further recommends that Quasar be granted leave to file an amended complaint reasserting the O&M Agreement claims, pending outcome of the motions in the Oregon suit, which will avoid any concerns that the parties will be prevented from litigating their claims under the O&M Agreement.

the waiver provision of the O&M Agreement specifically prevents Quasar from now arguing that Oregon is an inconvenient forum. Thus, it will be up to the Oregon District Judge whether to entertain this argument at all.

### III. RECOMMENDATION

Accordingly, the Magistrate Judge RECOMMENDS that the District Court enter an order GRANTING Defendant's Motion to Dismiss the O&M Agreement claims without prejudice (Doc. 14), and with leave for Plaintiff to file an amended complaint reasserting those claims, pending the outcome of the motions currently before the District Court in Oregon.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 27th day of November, 2018.

Eric J. Markovich
United States Magistrate Judge