**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| quasar energy group LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>WOF SW GGP 1 LLC,<br><br>　　　　Defendant. | No. CV-18-02300-PHX-RCC (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court are two motions to dismiss filed by third-party defendants Iron Dynamics, Inc. ("Iron") and Mankel Mechanical, LLC ("Mankel"). (Docs. 48 and 98). Defendants argue for dismissal of Plaintiff's third-party complaint for failure to comply with Ariz. Rev. Stat. § 12-2602. Plaintiff filed responses to both motions and Mankel filed a reply in support of its motion. (Docs. 51, 53, and 108). For the reasons stated below, the Magistrate Judge recommends that the District Court enter an ordering denying the motions to dismiss.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff quasar energy group, llc ("quasar") filed this action on July 23, 2018 alleging claims against Defendant WOF SW GGP 1 LLC ("WOF") for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment. (Doc. 1). The basis of the parties' dispute concerns two contracts: a Design-Build Agreement and General Conditions Between Owner and Design-Builder ("Design-Build Agreement"), whereby WOF would pay quasar to construct an anaerobic

digestion facility, and an Operations and Maintenance Management Services Agreement ("O&M Agreement"), whereby WOF would pay quasar to manage and operate the project. (Doc. 1 at 3–4).[1]

On February 8, 2019 WOF filed an Answer and Counterclaim against quasar alleging claims for breach of contract, breach of warranty, breach of good faith and fair dealing, and declaratory relief. (Doc. 35 at 18–21). quasar then filed a third-party complaint against its subcontractors, including third-party defendants Mankel and Iron, alleging indemnity claims. (Doc. 46 at 14, 25). Both claims contain substantially the same language:

> 56. WOF has asserted various claims against quasar in connection with the Project, including claims for delay and/or defective work that relate directly to the work that was performed by Iron Dynamics under the Iron Dynamics Subcontract with quasar.
>
> 57. Iron Dynamics had a duty to quasar to perform its work on the Project in a good, timely, and workmanlike manner.
>
> 58. To the extent that WOF's allegations are proven, all allegations now being specifically denied, and WOF is found to be entitled to damages from quasar for breach of the duties that Iron Dynamics agreed to perform, then the same would constitute a breach of the Iron Dynamics Subcontract and would entitle quasar to damages from Iron Dynamics in an amount that shall be proven at trial.
>
> 59. Further, and if quasar is held liable to WOF, all liability now being specifically denied, then quasar should be indemnified by Iron Dynamics to the extent that the liability of quasar is attributable to or in any way connected with Iron Dynamics performance under the Iron Dynamics Subcontract, in an amount to be proven at trial.

*Id.* at 15; *see also id.* at 25–26.[2] Mankel and Iron subsequently filed the motions to dismiss now pending before the Court.

## II. DISCUSSION

Mankel and Iron are represented by the same counsel and filed substantially

---

[1] On January 25, 2019 this Court entered an Order granting Defendant WOF SW GGP 1 LLC's motion to dismiss the O&M Agreement claims and giving Plaintiff leave to file an amended complaint reasserting those claims, pending the outcome of the motions currently before the District Court in Oregon. (Doc. 33).

[2] quasar filed an Amended Third-Party Complaint on October 24, 2019 to add an additional third-party defendant and remove one defendant. (Doc. 132).

identical motions to dismiss based on Ariz. Rev. Stat. § 12-2602. Defendants argue that pursuant to the statute, quasar was required to file a written statement certifying whether its claims against Mankel and Iron will require expert testimony to prove the standard of care. Mankel and Iron state that because they are licensed contractors, quasar cannot establish that their work fell below the requisite standard of care without expert testimony. Therefore, Mankel and Iron request that the Court dismiss quasar's third-party complaint against them, or in the alternative, require quasar to provide the certification and a preliminary expert opinion.

In its responses, quasar contends that § 12-2602 does not apply here because quasar asserts indemnification claims and the statute specifically applies to claims based on breach of contract, negligence, misconduct, and errors or omissions in rendering professional services. quasar further states that even if the statute does apply to its indemnification claims, the appropriate remedy is for the Court to order quasar to comply with the statute, not to dismiss its claims against Mankel and Iron.

### A. Law

Defendants rely on the following provisions of Ariz. Rev. Stat. Ann. § 12-2602:

> A. If a claim against a licensed professional is asserted in a civil action, the claimant or the claimant's attorney shall certify in a written statement that is filed and served with the claim whether or not expert opinion testimony is necessary to prove the licensed professional's standard of care or liability for the claim.
>
> B. If the claimant or the claimant's attorney certifies pursuant to subsection A that expert opinion testimony is necessary, the claimant shall serve a preliminary expert opinion affidavit with the initial disclosures that are required by rule 26.1, Arizona rules of civil procedure. The claimant may provide affidavits from as many experts as the claimant deems necessary. The preliminary expert opinion affidavit shall contain at least the following information:
>
> 1. The expert's qualifications to express an opinion on the licensed professional's standard of care or liability for the claim.
>
> 2. The factual basis for each claim against a licensed professional.
>
> 3. The licensed professional's acts, errors or omissions that the

> expert considers to be a violation of the applicable standard of care resulting in liability.
>
> 4. The manner in which the licensed professional's acts, errors or omissions caused or contributed to the damages or other relief sought by the claimant.
>
> . . .
>
> F. The court, on its own motion or the motion of the licensed professional, shall dismiss the claim against the licensed professional without prejudice if the claimant fails to file and serve a preliminary expert opinion affidavit after the claimant or the claimant's attorney has certified that an affidavit is necessary or the court has ordered the claimant to file and serve an affidavit.

Defendants further note that § 12-2601(3) defines "licensed professional" as "a person, corporation, professional corporation, partnership, limited liability company, limited liability partnership or other entity that is licensed by this state to practice a profession or occupation under title 20 or 32 or that is admitted to the state bar."

quasar relies on § 12-2601(1)(b), which defines "claim" as a legal cause of action that "is based on the licensed professional's alleged breach of contract, negligence, misconduct, errors or omissions in rendering professional services."

### B. Analysis

By the plain language of the statute, § 12-2602(A) applies to "claim[s] against a licensed professional [] asserted in a civil action." It does not specify any limits on what type of claims. However, § 12-2601(1)(b) specifies that "'[c]laim' means a legal cause of action . . . based on the licensed professional's alleged breach of contract, negligence, misconduct, errors or omissions in rendering professional services."

Defendants incorrectly assert that there have been no Arizona cases addressing the applicability of § 12-2602 to indemnity claims. (Doc. 53 at 2). As Plaintiff notes, Maricopa County Superior Court has found that a party is not required to disclose a preliminary expert opinion affidavit for an indemnity claim. *Del Webb Communities, Inc. v. Atrium Door & Window Co.*, 2009 Ariz. Super. LEXIS 1737, at \*1–2 (Maricopa Cty. Super. Ct. Oct. 28, 2009); *see also Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, ¶¶16–18 (Ct.

App. 2008) (holding plaintiff was not required to provide a preliminary expert opinion affidavit regarding a licensed professional's standard of care with respect to vicarious liability claim). While the case law is brief, by its plain terms § 12-2601(1)(b) limits § 12-2602 to claims based on breach of contract, negligence, misconduct, or errors or omissions in rendering professional services. Because quasar asserts only indemnification claims against Mankel and Iron, the undersigned finds that quasar was not required to file a written statement certifying whether its claims against Mankel and Iron will require expert testimony to prove the standard of care pursuant to § 12-2602.

### III. RECOMMENDATION

Accordingly, the Magistrate Judge RECOMMENDS that the District Court enter an order DENYING the motions to dismiss. (Docs. 48 and 98).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 9th day of December, 2019.

Eric J. Markovich
United States Magistrate Judge